JUDGMENT

ENTERED FEB 14 1997
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED
CLERK, U.S. DISTRICT COURT
FEB 12 1997
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

NO. 90-50053
CT/AG#: CR-85-0606-PAR

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JUAN RAMON MATTA-LOPEZ, aka: MATTA-BALLESTEROS, aka: JUAN RAMON, aka: EL NEGRO, aka: JUAN RAMON MATTA

Defendant - Appellant

APPEAL FROM the United States District Court for the Central District of California, Los Angeles .

THIS CAUSE came on to be heard on the Transcript of the Record from the United States District Court for the Central District of California, Los Angeles and was duly submitted.

ON CONSIDERATION WHEREOF, It is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is AFFIRMED.

Filed and entered December 26, 1996

182

1/16

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED
DEC 26 1995
CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUAN RAMON MATTA-LOPEZ, aka MATTA-BALLESTEROS, aka JUAN RAMON, aka EL NEGRO, aka JUAN RAMON MATTA,

Defendant-Appellant.

No. 90-50053

D.C. No. CR-85-0606-PAR

**MEMORANDUM***

Appeal from the United States District Court
for the Central District of California
Pamela Ann Rymer, District Judge, Presiding

Argued and Submitted January 5, 1993
Pasadena, California

Before: BROWNING, POOLE and NOONAN, Circuit Judges.

Juan Ramon Matta appeals his conviction and sentence, following a jury trial, for one count of conducting a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848, one count of conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and five substantive counts of distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). We have jurisdiction over this timely appeal under 28 U.S.C. § 1291, and we affirm.

I

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3.

16

In September 1981, agents of the federal Drug Enforcement Administration (DEA) smashed a large cocaine conspiracy operating out of an apartment complex in Van Nuys, California. From January 1981 through September 1981, the organization sold 1,347 kilograms of cocaine for $73,561,832 to 27 midlevel distributors. At trial, the government presented evidence that Matta was the supplier, organizer, and leader of the drug organization. This evidence was presented in two ways: (1) the supplier was "El Negro" aka "Jose Campo" and (2) Matta was El Negro/Jose Campo.

To prove that the supplier was El Negro/Jose Campo, the government introduced ledgers and phone books of the Van Nuys conspirators and telephone toll records showing that indicted coconspirator James Victoria-Cano delivered cocaine to the Van Nuys conspirators, who paid him more than 23 million dollars from June to September 1981. The government also introduced a personal phone book, papers found in one of the Van Nuys apartments (Gov't Exh. 27), and papers found in trash thrown away by indicted coconspirator Marta Cardona (Gov't Exh. 9B) that contained several phone numbers and the names "El Negro," "Negro Lica," "Negro Cali," and "Negro Jose." The phone numbers were in code, and when decoded, corresponded to numbers listed in the 1981 Cali, Colombia telephone phone book for a business belonging to Matta's wife. Telephone toll records showed fifteen calls from the Van Nuys complex to another number in the personal phone book for "Negro Jose." A courier also testified that she heard Van Nuys conspirators refer to El Negro as the supplier.

The government also presented testimony by Hector Barona, a drug smuggler who entered into the witness protection program. Barona testified that James Acosta, who told him that he worked for Jose

Campo/El Negro/Negro Jose, recruited him to import cocaine. Barona testified, and his pilots confirmed, that he imported two shipments of cocaine in May 1981 and July 1981, and, pursuant to Acosta's directions, delivered the cocaine to Dario Zapata-Serna. Telephone toll records show multiple calls from Barona's phone to Zapata-Serna's phone during July 1981. Telephone toll records also show a phone call from the Van Nuys apartment complex to Zapata-Serna's phone. The conspirators' drug ledgers show that the Van Nuys conspirators flew to New York and picked up cocaine from Zapata-Serna.

To establish that Matta was El Negro/Jose Campo, Barona testified, and his pilot confirmed, that he tried to import two shipments of cocaine in October 1981, after the dates covered in the indictment, but the planes crashed. After the first crash, Barona testified that Acosta told him that El Negro/Jose Campo would reimburse him. After the second crash, Acosta told him that Jose Campo wanted to talk to him. Barona testified that Jose Campo called him and that Barona called him back several times. Telephone toll records showed calls from Barona's phone to an unidentified Bogata, Colombia number during this time period.

In November 1981, Barona traveled to Cali, Colombia to meet with Jose Campo. He followed Acosta's directions to a house on Guadalupe Avenue, which he subsequently identified from a photograph as 5-55 Guadalupe Avenue. This address was listed in the 1981 Cali, Colombia phone book as the address for Matta's wife's business. Barona asked for Jose Campo and was directed to a room, where a man was presiding over a meeting of several persons known to Barona as drug traffickers. The man identified himself as Jose Campo, and Barona

recognized his voice from the prior phone calls. Barona identified him at trial as Matta.

The jury convicted Matta of all counts charged in the indictment, and the district court sentenced him to life imprisonment without the possibility of parole on the CCE count, concurrent fifteen-year sentences on the substantive counts, and an alternative concurrent fifteen-year sentence on the conspiracy count to be imposed only if the CCE conviction were reversed on appeal. This appeal followed.

II

Matta contends that the district court lacked jurisdiction to try him because he was forcibly abducted from Honduras and brought to the United States for trial. In United States v. Matta-Ballesteros, No. 91-50336, slip op. 15089 (9th Cir. Dec. 1, 1995), we rejected this contention. Accordingly, we affirm the district court's determination that it had jurisdiction to try Matta.

III

Matta contends on appeal that his speedy trial rights were violated by (1) the delay between January 6, 1986, the date the indictment was unsealed, and April 5, 1988, the date he was brought to the United States, and (2) the delay between April 5, 1988 and May 9, 1989, the date that he was arraigned.

We decline to address the merits of Matta's speedy trial claim because he did not raise the issue sufficiently in the district court. In the district court, he argued only that his speedy trial rights "may have been violated by the delay in prosecution" and "reserve[d] the right to supplement" his motion to dismiss based on the speedy trial claim after discovery. The district court observed

that Matta cited no law or facts in support of his motion and denied the motion without prejudice. Matta did not pursue the claim further. Matta's failure to litigate his claim in the district court precludes appellate review. See United States v. Oregon, 769 F.2d 1410, 1415 (9th Cir. 1985).

IV

Matta contends that the district court erred by admitting coconspirator statements generally because the government did not prove his connection to the conspiracy by a preponderance of the evidence. He also challenges the admission of specific statements on the grounds that some statements were made after the conspiracy ended and other statements could not be linked to specific coconspirators. We disagree.

A. Admission of Specific Statements

Because the coconspirator statements, although not sufficient proof, may be used to prove Matta's connection to the conspiracy, see United States v. Silverman, 861 F.2d 571, 577 (9th Cir. 1988), our initial inquiry is whether Matta's challenges to the admission of specific statements have any merit. Matta essentially challenges the admission of the evidence under Federal Rules of Evidence 402, 403, and 404, and thus, we review for an abuse of discretion. United Stated v. Blaylock, 20 F.3d 1458, 1462 (9th Cir. 1994).

Matta initially contends that the district court erred by admitting evidence regarding two attempted air shipments of cocaine in October 1981 on the ground that the events occurred after September 24, 1981, the end of the period covered by the indictment. The evidence consisted primarily of Barona's testimony regarding the attempted importations and his conversations and meetings with Matta

and Acosta. Matta's challenges to the admission of this evidence fail for three reasons.

First, Matta's own statements to Barona are party admissions admissible under Fed. R. Evid. 801(d)(2)(A). See United States v. Zavala-Serra, 853 F.2d 1512, 1515 (9th Cir. 1988) (defendant's statements to government witness were party admissions). We have upheld the admission of a party's statements made after the end of the conspiracy when the statements are relevant to the defendant's knowledge of and role in the conspiracy. See United States v. Harrison-Philpot, 978 F.2d 1520, 1527 (9th Cir. 1992) (admissions to government agents regarding possible drug sale showed defendant's participation in prior charged conspiracy), cert. denied, 113 S. Ct. 2392 (1993); United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400-02 (9th Cir.) (admissions made nine weeks after the charged offense showed defendant's knowledge), cert. denied, 111 S. Ct. 2861 (1991). Here, as in Harrison-Philpot, the district court gave a limiting instruction that the evidence was relevant only to Matta's role in the conspiracy. See 978 F.2d at 1527 & n.7. The district court did not abuse its discretion by admitting testimony regarding Matta's admissions.

Second, most of Barona's direct testimony regarding the post-September activities is not objectionable on coconspirator statement grounds. Instead, Matta really objects to the admissibility of subsequent bad acts evidence under Fed. R. Evid. 404(b) on the ground that the testimony's probative value is substantially outweighed by the danger of unfair prejudice. See Bibo-Rodriguez, 922 F.2d at 1400-01. Matta argues that unfair prejudice is demonstrated because

Barona's testimony is "unbelievable" and inconsistent and the government "offered no assurance of Barona's credibility."[1/]

The question of Barona's credibility was for the trier of fact, however, "not for an appellate court reviewing his testimony on the basis of a cold record." Zavala-Serra, 853 F.2d at 1515. Moreover, Barona's pilots, the drug ledgers, and telephone toll records corroborated his testimony regarding the actual and attempted importations and delivery to the Van Nuys conspirators via Zapata-Serna. Telephone toll records also show calls from Barona's phone to an unidentified Bogata number after the planes crashed, which corroborates his story that he called Matta. Thus, as in Zavala-Serra, Barona's corroborated testimony was not inherently incredible. See 853 F.2d at 1515. Barona's exchange of his testimony for protection in the witness protection program does not render his testimony inherently unbelievable. Furthermore, the district court's limiting instruction assuages Rule 403 concerns. See Harrison-Philpot, 978 F.2d at 1527. In sum, the district court did not abuse its discretion by admitting the other acts evidence as relevant to Matta's role in the conspiracy.

Third, to the extent Matta even raises the issue, admission of Barona's testimony regarding unindicted coconspirator Acosta's post-September 1981 statements is harmless because Acosta's statements duplicate other evidence. See United States v. Garza, 980 F.2d 546, 553 (9th Cir. 1992).

---

1/ The government suggests that Matta did not raise the Rule 404(b) issue on appeal, but we reach this issue because Matta discusses it specifically in both his opening and reply briefs.

Matta also asserts that the district court erred by admitting two documents, Government Exhibits 27 and 9B, as coconspirator statements because handwriting analysis could not link them to any coconspirator. These documents, which were found in the Van Nuys apartments and in trash thrown out by a coconspirator, contained phone numbers registered to Matta's wife's business and the names "El Negro," "Negro Lica," and "Negro Cali." The district court admitted the evidence only to show an "association, if any, between the person or place where found and the person or place noted."

"A hearsay declaration may be admissible if it is offered, not for the truth of the matter asserted, but to prove that the persons involved in the communications were coconspirators." United States v. Sanchez-Lopez, 879 F.2d 541, 554 (9th Cir. 1989) (citing with approval United States v. Mazyak, 650 F.2d 788, 792 (5th Cir. 1981), cert. denied, 455 U.S. 922 (1982), where "a letter addressed to individuals charged with a conspiracy which was found on a vessel containing contraband was not admitted for its truth, but was relevant evidence admitted for the limited purpose of linking the individuals to the vessel and to each other"); see also United States v. Huguez-Ibarra, 954 F.2d 546, 552-53 (9th Cir. 1992) (admitted (1) drug transaction notepads not linked to specific coconspirators to show that the type of activities charged in the indictment were being carried out in the residence, not to prove what was written in the pads, and (2) car receipt in name similar to defendant's name showing cash payment of $4000). The evidence may be admitted if there is a sufficient showing of relevance and authenticity and if its probative value is not substantially outweighed by any undue prejudice. Fed. R. Evid. 403; Huguez-Ibarra, 954 F.2d at 553.

Here, the documents, like the letter in Mazyak, were admitted to show association. See Sanchez-Lopez, 879 F.2d at 554 (citing Mazyak, 650 F.2d at 792). The documents were relevant, and they were found either in an apartment that was used only for drugs or in trash that was thrown away by a coconspirator. See Huguez-Ibarra, 954 F.2d at 552-553. Moreover, the district court gave a limiting instruction that minimized the risk of undue prejudice. Accordingly, the district court did not abuse its discretion by admitting the evidence. In any event, the notations in the documents duplicated other evidence that was properly admitted, and thus any error is harmless. See Garza, 980 F.2d at 553.

B. Admissibility Generally

Because Matta's challenges to the district court's admission of specific statements fail, we now examine whether the government proved Matta's connection to the conspiracy by a preponderance of the evidence such that coconspirator statements generally should have been admitted. See Silverman, 861 F.2d at 577-78.

As a factual predicate for the admissibility of the statements, the government must prove the existence of a conspiracy and the defendant's connection to it by a preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171, 181 (1987); Silverman, 861 F.2d at 577.[2/] The coconspirator's statements may be used to prove

---

[2/] Our standard of review regarding the district court's determination of this factual predicate is unclear. United States v. Pena-Espinoz, 47 F.3d 356, 361 n. 3 (9th Cir. 1995) (standard "unsettled"). In Bourjaily, the Supreme Court noted that the district court's factfinding regarding the existence of a conspiracy was not clearly erroneous. 483 U.S. at 181. On the other hand, this Court has reviewed "de novo the legal question of whether the government established a prima facie showing of conspiracy but apply a clearly erroneous standard in reviewing whether a challenged statement was made in the course and furtherance of the conspiracy."
(continued on next page)

these preliminary facts, Bourjaily, 483 U.S. at 181, but because coconspirator statements are presumptively unreliable, this court requires evidence of the conspiracy and the defendant's connection to it that is independent of the coconspirator statements. Silverman, 861 F.2d at 577-78. A "slight" connection to the conspiracy is sufficient for admission of coconspirator statements. United States v. Pinkey, 15 F.3d 825, 827 (9th Cir. 1994), quoting United States v. Foster, 985 F.2d 466, 469 (9th Cir. 1993), United States v. Penagos, 823 F.2d 346, 348 (9th Cir. 1987).

Barona testified that he imported cocaine from Matta and delivered the cocaine to Dario Zapata-Serna. His pilots corroborated his testimony regarding flights from Colombia to the United States during the conspiracy and during October 1981. Documents found in the apartment and in trash thrown away by a coconspirator were admitted for association and showed a connection between the Van Nuys drug operation and Matta. Other evidence showed an association between the Van Nuys coconspirators and Zapata-Serna. Independent evidence establishes at least a "slight" connection to the conspiracy, and the district court did not err by finding that by introducing this evidence and the coconspirator statements, the government demonstrated Matta's connection to the conspiracy by a preponderance of the evidence. See Silverman, 861 F.2d at 577-78;

(continued from previous page)
Pena-Espinoza, 47 F.3d at 360-361, quoting United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir.)(citation omitted), cert. denied, 114 S. Ct. 573 (1993). We do not resolve the ambiguity because we hold that the district court did not err under either standard.

Penagos, 823 F.2d at 348.

V

Matta contends that the district court erred by admitting into evidence a 1981 Cali, Colombia phone directory and a Venezualan passport. We review for an abuse of discretion. United States v. Yin, 935 F.2d 990, 994 (9th Cir. 1991).

The government introduced the 1981 Cali phone directory, which listed numbers found in the coconspirators' papers as the business number of Matta's wife and which listed 5-55 Guadalupe Avenue, the location of Barona's meeting with Matta, as her business address. Admission of the phone directory was proper under Fed. R. Evid. 803(17). See United States v. Anderson, 532 F.2d 1218, 1225 (9th Cir.), cert. denied, 429 U.S. 839 (1976). Moreover, government witnesses testified that the book was reliable, and accordingly, Matta's argument fails.

The government also introduced into evidence a Venezualan passport seized from Matta that was issued in 1981 and that contained Matta's photograph and a false name. During closing argument, the government argued that Matta's possession of the false passport tended to show he was not "merely a legitimate, honest cattle rancher." The district court did not abuse its discretion by admitting the passport. See United States v. Guerrero, 756 F.2d 1342, 1347 (9th Cir.) (false identification shows consciousness of guilt), cert. denied, 469 U.S. 934 (1984); United States v. Birges, 723 F.2d 666, 672 (9th Cir.) (same), cert. denied, 469 U.S. 943 (1984). Moreover, the admission of the passport did not affect Matta's substantial rights, and thus any error is harmless. See

Garza, 980 F.2d at 553.

VI

Matta contends that his motions for a judgment of acquittal and a new trial should have been granted because there was insufficient evidence to prove his connection to the conspiracy beyond a reasonable doubt, the jury was improperly instructed that a conviction on the conspiracy count could support convictions on the underlying substantive counts, the jury was unduly inflamed by prejudicial publicity, and new evidence established that another drug trafficker was El Negro. We disagree.

First, sufficient evidence supports Matta's conviction for conspiracy. After the government establishes the existence of a conspiracy, it "need only prove a 'slight' connection between the defendant and the conspiracy." United States v. Foster, 57 F.3d 727, 729 (9th Cir. 1995). Matta concedes the existence of a conspiracy, and the government established his connection to the conspiracy through Barona, who identified him as the supplier of the drug ring. Matta's contention that Barona's testimony was not credible fails. Barona's credibility was for the jury to weigh, not this court. See United States v. Endicott, 803 F.2d 506, 515 (9th Cir. 1986); see also United States v. Lai, 944 F.2d 1434, 1440 (9th Cir. 1991) ("[e]ven the uncorroborated testimony of an accomplice is enough to sustain a conviction unless it is incredible or insubstantial on its face"), cert. denied, 112 S. Ct. 947 (1992). Moreover, other evidence corroborated Barona's testimony, including testimony from his pilots regarding the actual and attempted importations, documentary evidence and a courier's testimony that Matta/El Negro/ Jose Campo was the supplier, and other evidence showing a connection

between the Van Nuys conspirators and Zapata-Serna, the intermediary who received the cocaine from Matta via Barona. In sum, drawing all inferences in favor of the government, a rational jury could conclude beyond a reasonable doubt that Matta was the supplier of the drug conspiracy. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Second, the district court did not err by instructing the jury that if they convicted Matta of conspiracy, they could convict him of the underlying substantive offenses. See Pinkerton v. United States, 328 U.S. 640, 646-47 (1946).

Third, the pretrial publicity was not so pervasive that prejudice can be presumed. See United States v. Rewald, 889 F.2d 836, 864 (9th Cir. 1989), amended on other grounds, 902 F.2d 18 (9th Cir.), cert. denied, 498 U.S. 819 (1990). Some jurors knew about the publicity and some did not, but all asserted that they could be fair and impartial. The trial court's findings that the jurors were not biased were not manifestly erroneous. See Patton v. Yount, 467 U.S. 1025, 1031 (1984).

Fourth, an article regarding the arrest of another drug trafficker known as El Negro did not warrant a new trial. Although the article arguably was relevant, Matta presented evidence that El Negro was a common nickname. Moreover, other evidence linked him to the Van Nuys conspirators. Thus, the article was cumulative and not likely to result in an acquittal, and the district court did not abuse its discretion by denying Matta's motion for a new trial. See United States v. Davis, 960 F.2d 820, 824-825 (9th Cir.), cert. denied, 113 S. Ct. 210 (1992).

VII

Matta argues that his rights under the Confrontation Clause of the sixth amendment were violated when the district court did not allow him to cross-examine Barona about "an incident where Barona allegedly put a pistol in a pilot's mouth" and about Barona's relationship with Manuel Noriega in order to show Barona's reprehensible character. The district court did not abuse its discretion in limiting the cross-examination because the testimony that Matta sought to elicit was not probative of truthfulness. See Fed. R. Evid. 608(b); United States v. Whitworth, 856 F.2d 1268, 1284 (9th Cir. 1988), cert. denied, 489 U.S. 1084 (1989). Moreover, Matta cross-examined Barona over a period of four days. The district court's minor restrictions on cross-examination did not limit the jurors' ability to "appropriately draw inferences relating to [Barona's] . . . reliability," and thus Matta's Confrontation Clause rights were not violated. See Delaware v. Van Arsdall, 475 U.S. 673, 678, 680 (1986): United States v. Torres, 937 F.2d 1469, 1473 (9th Cir. 1991), cert. denied, 502 U.S. 1037 (1992).

VIII

Matta contends for the first time on appeal that the prosecutor denied him a fair trial by vouching for documentary evidence and a government witness. The prosecutor's statements were not plain error. See United States v. Laurins, 857 F.2d 529, 539 (9th Cir. 1988), cert. denied, 492 U.S. 906 (1989).

First, although the prosecutor arguably suggested in closing that telephone toll records established that coconspirators called each other, the district court cured any error by interrupting the prosecutor and reinstructing the jury that the toll records showed

only that calls were made from one number to another and did not show that two people spoke to each other. See Endicott, 803 F.2d at 513.

Second, the prosecutor's closing argument that notations in the drug ledgers "do not lie" is not prosecutorial misconduct rendering Matta's trial fundamentally unfair. See United States v. Yarbrough, 852 F.2d 1522, 1539 (9th Cir.), cert. denied, 488 U.S. 866 (1988).

Third, although the prosecutor speculated that Barona's story would have fallen apart on cross-examination if he had fabricated it, in context the remarks were not vouching. In any event, any error was not plain error rendering Matta's trial fundamentally unfair. See id. at 1539. Similarly, the prosecutor's statement that the government "risked" plea bargains to get "somebody higher up" was in response to Matta's criticism of Barona's plea and was not plain error. See id.

IX

Matta contends that the district court erred by sentencing him on the CCE count (Count VII) and on the underlying substantive offenses in Counts II through VI, which he argues should be dismissed as "lesser included offenses." This argument fails.

Although a district court may not sentence a defendant on both a CCE count and a predicate conspiracy count, United States v. Medina, 940 F.2d 1247, 1253 (9th Cir. 1991), it may sentence a defendant for both a CCE offense and any underlying substantive offenses. Garrett v. United States, 471 U.S. 773, 779 (1985); United States v. Burt, 765 F.2d 1364, 1368-69 (9th Cir. 1985). The district court followed this rule when it sentenced Matta to life without parole on the CCE count, concurrent fifteen-year sentences on the substantive offenses, and an alternative concurrent fifteen-year sentence on the conspiracy

count (Count I), effective only if the CCE conviction is reversed on appeal. See Medina, 940 F.2d at 1253 (court should sentence in the alternative on the predicate conspiracy count in case of appellate reversal of the CCE count); Burt, 765 F.2d at 1368-69.

**AFFIRMED.**

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST
JAN 24 1997
by: [signature]
Deputy Clerk

INTERNAL USE ONLY: Proceedings include all events.
90-50053 USA v. Matta-Lopez

UNITED STATES OF AMERICA
Plaintiff - Appellee

Manuel A. Medrano, Esq.
FTS 798-2423
213/894-2423
[COR LD NTC aus]
Environmental Defense Section
U.S. Department of Justice
Washington, DC 20530-4758

Sean Connelly, Esq.
[LD NTC gov]
DEPARTMENT OF JUSTICE
Criminal Division
Room 2720
Washington, DC 20530

John L. Carlton, Esq.
[COR NTC aus]
USLA - OFFICE OF THE U.S. ATTORNEY
Criminal Division
312 North Spring Street
Los Angeles, CA 90012

v.

JUAN RAMON MATTA-LOPEZ, aka: MATTA-BALLESTEROS, aka: JUAN RAMON, aka: EL NEGRO, aka: JUAN RAMON MATTA
Defendant - Appellant

Martin R. Stolar, Esq.
212/219-1919
fax212/941-0980
[COR LD NTC ret]
Michael J. Burns, Esq.
212/219-1919
[LD NTC ret]
351 Broadway
4th Floor
New York, NY 10013

Adolfo Z. Aguila, Esq.
305/261-4000
[COR LD NTC ret]
AGUILA-ROJAS LAW BUILDING
6780 Coral Way
Suite 200
Miami, FL 33155